That's close enough. Okay, that's close enough. People mispronounce my name too. When you come forward, if you would identify yourselves and tell us who you represent. As you may know, we have three cases this morning, so we have a real full docket. We've scheduled each for half an hour, and so we'll try to hold you to that. One of the reasons we brought you here today, of course, is that we want to engage in a dialogue. We're real familiar with the facts of the case. We're real familiar with the law that you've raised, and we want to discuss it with you. That means that we have probably a lot of questions. We may not quite make 30 minutes, maybe a little bit longer, but we are aware that we do have cases coming in all morning. So if you would get your strongest part, and I assume that you'll take some time for rebuttal, but we are ready to hear from you when you are ready. Thank you, Your Honor. My name is Robert Markfield, and may it please the Court and Counsel, my name is Robert Markfield, and I represent Defendant Appellant James Decaluwe, if that's how to say it, Decaluwe in this matter. I want to open by acknowledging what perhaps needs no acknowledgment, that this defendant engaged in some very serious and very objectionable conduct, luring a teenage complainant into his car, bringing him home, handing him a camera and pulling a gun. He was, in fact, significantly punished for this conduct, irrespective of the outcome of this case, via his convictions for aggravated kidnapping and armed violence, which comprised 21 of his 27-year sentence of imprisonment. However, the behavior that I described does not constitute attempt sexual assault, because it was not a substantial step to the forced act of penetration. He did not undress. He did not request that the complainant undress. He did not touch the complainant's genitals or expose himself. He did not even clearly communicate a demand for sex. A substantial step in Illinois requires dangerous proximity to success or to successful completion of the act. And what I described, Your Honor, does not constitute a substantial step. It does not constitute dangerous proximity. Counsel, on page 21 of your brief, you acknowledge that the defendant was sexually assaulted and that the state's witness testified that the defendant, in his confession, stated that he intended to have sex with the victim. And that was his intent, that was his goal when he picked this boy up and took him home. He touched various parts of his body. Isn't that a substantial step? Well, I drew the distinction, Your Honor, since attempt is two elements, intent and substantial step. In my brief, as you correctly noted, I did concede intent. He said that he intended to have sex, and I cannot challenge under this appellate standard of review, of course, intent. He said what his intent was. Substantial step, on the other hand, I think is more behavioral. It's not what was in his head. What about the brandishing of the gun and grabbing the kid when he tries to run away? That was, those were, as I acknowledge, pretty serious criminal acts, but they were not steps towards a sexual assault, towards the completion of a sexual assault, towards penetration. They were violent acts, but I mean, I think that looking at those acts, one could not really say that they placed a person in dangerous proximity of completing a sexual assault. Well, he said he picked the kid up for the purpose of having him take nude photographs and having sex with him. Then when the boy tried to run away, he grabbed him and brandished the gun. You don't think that that, I mean, by his own words, he said that he was, that was his intent. Well, of course, in, I would, yes, I mean, I have, once again, I do concede intent, and this argument is a substantial step. Intent is a lost cause for this defendant. Now, the steps that you described, I mean, this is a sex crime, and the steps that you described, Your Honor, were not sexual acts. There was no undressing. There was no genital touching. There was no clearly communicated demand for sex. Is it necessary that the victim be disrobed or be, in the process of disrobing, for there to be a substantial step? I would say, I would say there has to be, that there would have to be that or some sexual conduct, some clearly identifiable sexual conduct, not vague or de minimis, but I would say there would have to be undressing, there would have to be a clearly communicated desire for sex, or there would have to be, you know, intimate touching. None of those things were present, and that is why I say no substantial step, and certainly, you know, substantial step understood to mean dangerous proximity to completing the act. I know that the case relied on, by the State, Hawkins draws a distinction, an interesting distinction between steps already taken and steps remaining to be done, and places the focus on the former, steps already taken. Now, I would respectfully dispute that approach. I think that drawing that distinction, it's an artificial and a misplaced distinction, given that Illinois talks about dangerous proximity to success. There's no way to really determine and assess whether a person's close to his goal without determining what remains to be done. The analogy that popped into my mind, sort of a, maybe a silly one, is a person running a marathon, he runs a mile. That's probably not a substantial step towards completing a marathon. It might be a substantial step towards a much smaller, a much shorter race. So you need to assess what remains to be done, how far you have to go towards your goal, in order to assess whether that substantial step was taken. And I think in the background, there's a public policy rationale, a strong, a humane one, that you, the law should give a person contemplating some bad acts, in doing some bad acts, the chance to pull back before he's crossed the Rubicon, before it's too late. As indeed, you know, if we trust the defendant's word, he did. He said that he intended to have sex with the boy, but he also said he was able to control himself. Well, the kid ran away, Mr. Markfield. I mean, even if he pulled back, it's not clear to me at what point, at what point he pulled back. The boy saw a chance to escape, and he did. So... That is true, Your Honor. That, I have to admit that. But, I mean, the only evidence of his intent, the only direct evidence, is what he told the police. Perhaps there's circumstantial evidence, but the only direct evidence that he intended to have sex with this boy, as opposed to maybe doing something else that wasn't too nice, but the only direct evidence that he wanted to have sex with was what he told the police. And so, if that's given weight, I think that it should also be given weight that he told those very same police at the very same time. He was able to control himself. The final point that I want to make is that I rely, in my brief, on people v. Montevoco. I know that Montevoco has elicited some criticism from other panels of this Court and from other panels of this Court, but I do think that Montevoco, if that's how to pronounce it, made a, demanded that the complainant remove her underwear, twice demanded that. My defendant, my client, DeCalliway, did no such thing. So, even if this Court disapproves of the result in Montevoco, I think that it can still reverse DeCalliway's conviction. DeCalliway's conviction, though it's not in Montevoco's case, is in Montevoco's case. So, DeCalliway, though he relies on, he cites Montevoco, Montevoco is distinguishable. It's, the facts are essentially worse there than here. There, the defendant demanded that the complainant undress. Here, there was no such demand. Well, Your Honor, I guess that, that's my presentation, but I. Can you talk about your second issue a little bit? Yes, Your Honor. This is. Counsel, we don't mind if you don't fill up your time. The fact that you have a certain amount of time, that's how much we give you. But if you finish earlier, we're perfectly happy with that as well. Thank you, Your Honor. I appreciate that. But we would like you to respond to the question. I know, Your Honor, I had expected to argue the first issue. Okay, well, this was a new picture that was admitted into evidence. Over objection? Over objection, actually over a motion in limit. And there was, I mean, this is the traditional balancing test, probative or prejudicial. Is it more prejudicial than probative? It's, I think it's pretty straightforward. There was, and I will concede some probative value to the picture, to the new picture to show, for instance, that sort of tangential to show that he wanted to, to show that he had destroyed other pictures and maybe missed that one and that he had this fetish and that's why he wanted to take pictures of the boy, that stuff. How old was the picture? The picture was five years. That goes to prejudice. It was taken consensually. So it wasn't evidence of a sex crime. It was a consensual picture. It was five years old. So in terms of recency via remoteness, it was very remote from what happened. And I guess the most important point is it was really embarrassing. I mean, no person would want to have, standing trial for serious crime would want to have a nude picture of himself presented as evidence before a jury. It is prejudicial. It makes a person look ridiculous and maybe, maybe even a little bit obscene. There's a nice quote cited in my brief from Hendricks. The pursuit of justice has not permitted and must not now permit a man to be convicted based on an image created of him in the courthouse, based on the idiosyncrasies of his past life. And I thought that that was a very eloquent way of phrasing it. You know, the picture was terribly embarrassing. It was remote. It depicted consensual conduct and it should not have been admitted, Your Honor. Who took those photos? Was there testimony that the girlfriend had taken them? Yes, it's very clear that the girlfriend and now the wife took the picture. Okay. Thank you, counsel. Thank you, Your Honor. We'll allow you some time for rebuttal. Thank you, Your Honor. May it please the Court, I'm Assistant State's Attorney Stacia Weber on behalf of the people of the State of Illinois. Whether or not a substantial step occurred is a facts and circumstance test. That's true. But here the facts and circumstance clearly show the defendant without a doubt took a substantial step towards the sexual assault of this child victim. Tell me specifically what he did to take the substantial. What specifically constitutes the substantial step in your opinion? Combined with his intent, the substantial step was when he got in the car looking for a victim. He found the boys playing basketball and he offered $100 to come back to his home to move boxes. So the substantial step as far as your sexual penetration, and that's what the language says, is that he took the kid in his car and took him home. Yes. Follow-up question. The only information that the State has that this was his intent is the defendant's confession. So if he had never said, I intended to have sex with this victim, but I took him home for some other purpose, what would you have charged him with? This is a different question. If he had not admitted to the intent, then you would have had to look at the other circumstances. The fact that he wanted the boy to take pictures of him, that he touched the boy's thigh and shoulder in the car to say that he wanted to have a fun time when they got home, that his version of a fun time was the boy taking naked photographs of him. Counsel, how is that a substantial step towards sexual penetration? Well, penetration is any contact, however slight. So touching his shoulder. With the sex organ. His shoulder, counsel. The testimony was that he touched his shoulder and his thigh. Or maybe somewhere else, nowhere near the genitals, at least I didn't see that in the record. How is that a substantial step? Touching his thigh is an overt sexual act. It is a substantial step. Actually touching his genitals is sexual assault. When they were in the car on the way to the home before any conversation had taken place, the victim testified that the defendant touched his arm, his shoulder, and his thigh. The defendant admitted that. But how is that a substantial step towards sexual penetration? I'm not getting the connection. There's something missing in that for me. In an attempt crime, intent is important. I think your opponent conceded intent, but we're talking about the next step. You have to prove every single element of the crime. It can't be just parts. If it has three elements, you've got to prove all three. So I'm trying to figure out what is the substantial step towards sexual penetration that was taken. The model penal code has said that that is a substantial step, and Illinois courts have found that influential. What is? That lying in wait, searching for or following the contemplated victim of the crime. Defendant did that here. Enticing or seeking to entice the contemplated victim of the crime to go to the place contemplated for the commission of the crime. Defendant took him to his home where he knew they would be alone. He took him into the basement through the back door so no one else could see and wonder why he had a child at his home in the middle of the afternoon. Illinois courts have found the model penal code persuasive and under the model penal code combined with a strong corroboration of intent, which we have here because defendant admitted he wanted to have sex with the boy. That is a substantial step. That's a real dumb question. Tell me about the model penal code. What are we talking about there? Just generally. Model penal code, a committee grouped together. They wrote the law as it could maybe ideally be states have chosen to adopt or not to adopt it. Illinois has not adopted it. Why are we talking about that? Because the Illinois Supreme Court has cited this particular section of the model penal code in attempt cases and have found it instructive. Instructive. Yes. But even not relying on the model penal code, the case in Hawkins is also instructive here. The defendant went to the victim's home. He got in her bed. They were both completely clothed. He did not touch her. Are you saying that the fact that this child was in the basement of the defendant's home with him for, from the record, it seems like less than 10 minutes. The defendant left the room, came back in. The victim was able to escape. You're saying that that's analogous to Hawkins? I am saying that that's analogous to Hawkins. Defendant said he wanted to kick it with her, which probably meant that he wanted to have sex with her, but kick it could mean a lot of different things. Defendant here said he wanted to have a fun time. We know that his version of a fun time is having naked pictures taken of himself. That's how he gets aroused. And in Hawkins, there was no confession of intent, as there was here. So this case is even stronger. Further, in Hawkins, the victim was able to convince the defendant to leave on his own, and that is not what happened here. It is lucky that the child escaped in this case. He tried to escape. Defendant grabbed onto him. He pointed a gun at his head and said, get in here or I'm going to blow your head off. Let me take this in a different direction. If the state chooses to charge the defendant with a particular crime, the state has to prove every single element of that crime, right? Correct. But it's the state's prerogative in terms of the facts of whatever occurrence took place in terms of deciding what to charge the defendant with, right? Yes. In this case, but for the fact that the defendant, when he was talking to Detective Walsh, mentioned the fact that he had had some sexual fantasies and wanted to have sex with the boy, there was nothing else that would have caused the state to charge him with a sex crime, is there? Perhaps the photos, the evidence of shredded photographs in his apartment, the photo of him naked. If there had been no mention of sex at all, the shredded photographs in the wastebasket would have been sufficient to have him charged with a sex crime? Well, the fact that the defendant handed him a Polaroid camera, said, I want you to take pictures of me, and then they found naked pictures of him. It's clear what kind of pictures the defendant wanted the child to take. Let's be really, really precise about this, because earlier you said, I was going to ask this question. You said that the facts were that he asked the young boy to take naked pictures of him. Yes. Is that what happened? Are those the words? That's what you told us. Are those the words? The boy testified that he just said he wanted to take photos. Defendant said he told the boy he wanted to take naked photos. He did? That's not what you put in your brief. I haven't looked in the record. But your record cite is that the defendant claimed he brought him to the basement, gave him a camera, and told him he wanted to take some pictures. Defendant did not state what kind of pictures he wanted him to take. So when you just told us that he said he confessed that he wanted the boy to take naked pictures in your brief, you said that is not what you said. Which is it, ma'am? I'm sorry. There were several conversations the defendant had with the police officers. In his signed confession, defendant stated, Jim states he took naked pictures of him. He got the camera so that Omar could take his pictures naked. James stated that he tried to show the victim how to work the green Polaroid camera. So he didn't say whether or not he told the boy to take him naked. But he said in his statement that that's why he got the camera. It was his intent, but that's not what he said to the boy. I agree with that. Agreed. Okay. Let me ask you about these pictures. Yes. So after all this happened, the homeless searched, his girlfriend who is now his wife, either she, you know, turned it over or she participated in an investigation, and what was discovered was a camera with three pictures on it, correct? Yes. And she tested, one was of a dog and one of them was of the defendant in his shorts, and the other one was just the torso of a naked man. And his girlfriend, his wife, said that she had taken these pictures of him, that this was their dog, and these pictures were taken five years before. Yes. They were taken for fun. What relevance do these pictures have to this? They're absolutely relevant to show defendant's intent. Defendant, as both psychiatrists testified, had had testicular cancer or prostate cancer. He required more extreme situations to become aroused. This was how he became aroused. What other evidence do we have of that? We have both his statements and his girlfriend's statements that they took these pictures for fun, as part of their sex play. And that is relevant to this crime? It's relevant to this crime because he wanted to... Give me some more because I'm having a really, really hard time. It shows that his intent was to become aroused. This is how he gets aroused. It corroborates his statement. It corroborates the victim's statement that he wanted him to take pictures. It corroborates the defendant's statement that he shredded naked photographs of himself because he was afraid the police would be coming based on what the boy told them. If he wasn't afraid that he was not doing anything wrong, why would he shred these photographs? It's evidence of his... Do you have a time? How about five years? Five years before this event took place. How is it relevant to his state of mind that day? Anything else? Any other facts, anything else in between? The evidence is an insanity defense, right? It was an insanity defense. He's had two different types of cancer. The evidence was huge amounts of hormones, and the whole issue here was a debate between the experts as to whether or not he was in fact able to make his own judgments or if these drugs were what in fact brought him to do what happened here. In any of all that psychological evidence that was put in, was there anything about these pictures? I think that there were. Even if they were five years old, it shows... I'm asking, did the doctors, the psychiatrists who testified here, was there any testimony to tie up what they knew about his mental and physical state? Because that was the whole idea. This is more than just a mental state. There was a physical component to this. Was there any evidence from any kind of expert relating to these pictures? They both testified that he had problems with arousal, that he needed more extreme circumstances to arouse him. I'm going to ask a little bit different question. Assuming arguendo that they're relevant, it is your position that the probative value outweighed the prejudice in this case? Yes. There's nothing inherently illegal with having your girlfriend take naked photographs of yourself. In the concept of this case, though, under the facts of this case, the evidence that the state brought out, you don't think this was kind of prejudicial? All evidence is prejudicial. This wasn't overly prejudicial. Any evidence that tends to show that the defendant is guilty is clearly prejudicial towards him. But this was not overly prejudicial. There was nothing inherently illegal about it. His girlfriend testified that this is what they do for fun. He wanted the boy to take naked pictures of him for fun so he could maintain a state of arousal and have sex with the boy. I didn't read any testimony that said he told the boy they were going to have a fun time. And then later there was evidence that he asked the boy to take pictures of him. At no time did I read anything in the record that said I want you to take naked pictures of me for fun. I mean, I think we have to be really precise about the facts that we're talking about here. Well, he said to the boy they were going to have fun. His girlfriend testified that she took naked pictures of him for fun. Five years earlier. And wasn't it true that those pictures were found among her possessions? They were her pictures. She agreed that she had taken the pictures, but they depicted the defendant's torso. I'm still trying to figure out how does that relate, what is the probative value of that to the crime that took place in November of 2004, five years later? What's the probative value of that photograph? It's probative because it shows his intent. That he knew what he was doing, that he knew that it was wrong because he shredded the other photographs. Wouldn't you say it's probative because it shows the defendant is just a deviant? And that's basically what the photograph shows. This guy is just a deviant. He takes naked photos. But isn't that the very thing that the rules of evidence and the case law tries to prevent? You can't introduce evidence just to show that somebody is a bad person and he's deviant. It has to have something to do with that particular crime. And I'm asking you, what did that photo have to do with this particular crime? This photo was evidence that he, the photos that he didn't destroy.  He admitted to the officer that he shredded naked photographs of himself. It's not that these photographs existed all on their own, that they took this one naked photograph five years ago. Let's talk about the shredded naked photographs. What does that have to do with the crime? It establishes his intent and it establishes that his intent was to have the boy take naked photographs of him. It establishes that he was aware of what his behavior was. This wasn't someone that wasn't aware of the criminality of their behavior. As soon as the boy left, he tried to cover up his tracks. He hid the gun. He shredded naked photographs. He made a cover story to his girlfriend. He said that the boy had possibly stolen something and that's why he was afraid that the police were coming. These are all evidence of, it's also evidence of defendant's mental state as well as intent. Anything else, ma'am? No. For these reasons and those contained in our brief, we respectfully ask that you affirm the defendant's conviction. Thank you very much. Counsel, do you have a question? I know we're pressed for time, but I'll hit my main points. I do think that Illinois is a little bit in conflict with the model penal code approach. Model penal code does not include what Illinois clearly does, the concept in interpreting substantial theft of dangerous proximity to success. Now, in some hypothetical model penal code world, perhaps offering $100 and to move boxes or enticing into a car is a substantial step, but when you consider the concept that Illinois considers dangerous proximity to success, I would say that you're nowhere near that, the marathon metaphor. You have a long way to go between getting a kid into one's car as a step and sexual penetration as the completed act. There's a long way to travel, and so it is not dangerous proximity to success. I would also dispute, the state in its argument kind of analogizes the complainant's comment in Hawkins' ticket to defendants, we want to have a fun time. The important difference is context. When Hawkins said that, he was climbing into bed with the complainant and he had taken off his shoes. So he had begun undressing and communicated a desire for sex and gotten to bed with her. So he was much further along the road on that terrible marathon towards successful completion of the act. That's all I have. I think Your Honors have addressed my concerns on argument two, but I'll be happy to answer any questions.